2025 DEC 5 PM4:17

CLERK'S OFFICE USDC PR

RECEIVED AND FILED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**DERECK J. GARCÍA PÉREZ,**
 Plaintiff,

v.

**UNIVERSITY OF PUERTO RICO;**
**BOARD OF TRUSTEES OF THE**
**UNIVERSITY OF PUERTO RICO;**
**MERCEDES S. FERRER ALAMEDA,**
in her individual and official capacity;
**HÉCTOR J. CARLO COLÓN,**
in his individual and official capacity;
**CRISTINA POMALES GARCÍA,**
in her official capacity;
**THYRZIA M. ROURA CORDERO,**
in her official capacity;
**CELINES ALFARO ALMEYDA,**
in her official capacity,
 Defendants.

CIVIL NO. _25-CV-1654 MAJ_

## COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT, THE FAMILY EDUCATIONAL RIGHTS AND PRIVACY ACT, AND 42 U.S.C. § 1983

### JURY TRIAL DEMANDED

## 1. INTRODUCTION

1.1.   I, Dereck J. García Pérez, am 24 years old, and I live in Hormigueros, Puerto Rico. I am a senior-level student in the Industrial Engineering program at the University of Puerto Rico, Mayagüez Campus, which I will call "UPRM" or "the University" throughout this Complaint. I am filing this case pro se because I need this Court's help to protect my civil rights as a student with a disability.

1.2.    I have Level 1 Autism Spectrum Disorder. This is a disability under federal law. Because of my autism, I struggle with things that other students do not even have to think about: keeping track of multiple things at once, understanding instructions that are not written clearly, processing information when there is too much coming at me at the same time, and dealing with unexpected changes or ambiguous situations. My brain processes information differently, and I need certain accommodations to have the same opportunity at success that other students receive automatically.

1.3.    I am not asking for an advantage. I am asking for a level playing field. The accommodations I need—like having exams split into two parts, receiving study guides that tell me exactly what to study, having extended time, and getting clear, explicit instructions—are not shortcuts. They are tools that help me demonstrate what I actually know, instead of being penalized for how my brain processes information.

1.4.    This case arises from a coordinated campaign of discrimination and retaliation at UPRM. Professor Mercedes Ferrer Alameda has repeatedly and openly refused to provide my federally mandated accommodations, calling them "advantages" and declaring in writing that she would not comply. Professor Héctor J. Carlo Colón drafted an institutional resolution attacking accommodations identical to mine—a resolution that his colleague, Senator Ferrer Alameda, formally presented to the Academic Senate on November 18, 2025, to give it institutional legitimacy. Professor Carlo's wife, Dean Cristina Pomales García, oversees the very department where both professors work and where I am enrolled, creating an irreconcilable conflict of interest. The University's disability services office

1

(OSEI) and administration have known about these violations for years—**they signed two binding agreements with the federal government promising to fix them**—yet the discrimination continues. This Complaint seeks to hold all responsible parties accountable.

## 2.    JURISDICTION AND VENUE

2.1.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because I bring claims arising under the laws of the United States: Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g; and 42 U.S.C. § 1983 for violations of my constitutional rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment.

2.2.    Venue is proper in this District under 28 U.S.C. § 1391(b) because the University of Puerto Rico is located here, all Defendants reside in this District, and all acts giving rise to this Complaint occurred here.

## 3.    PARTIES

### 4.    A. Plaintiff

4.1.    I am Dereck J. García Pérez. I am a citizen of the United States residing in Hormigueros, Puerto Rico. I have been enrolled at UPRM since 2019. I am a qualified individual with a disability as defined by the ADA and Section 504. My disability is Level 1 Autism Spectrum Disorder, documented by qualified medical professionals and verified by the University's Office of Services for Students with Disabilities ("OSEI"). My Student ID number is 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.

2

**5.    B. Institutional Defendants**

5.1.    Defendant University of Puerto Rico is a public institution of higher education and an instrumentality of the Commonwealth of Puerto Rico. It is a "public entity" under Title II of the ADA, 42 U.S.C. § 12131(1). The University receives federal financial assistance, including Title IV funds (Pell Grants, federal student loans), federal research funding, and other federal appropriations, making it subject to Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

5.2.    Defendant Board of Trustees of the University of Puerto Rico is the governing body of the University of Puerto Rico system with final policymaking authority over all eleven campuses, including UPRM. The Board of Trustees is responsible for ensuring compliance with federal civil rights laws across the University system.

**6.    C. Individual Defendants**

6.1.    Defendant Mercedes S. Ferrer Alameda is a tenured Professor in the Department of Industrial Engineering at UPRM. She served as my professor during the Fall 2025 semester. She also serves as Academic Senator, a position through which she formally presented the discriminatory resolution described herein to the Academic Senate on November 18, 2025. I sue Professor Ferrer in both her individual capacity (for damages under § 1983) and her official capacity (for injunctive and declaratory relief under the ADA and Section 504). At all relevant times, Professor Ferrer acted under color of state law as an employee and official of a public university.

6.2.    Defendant Héctor J. Carlo Colón is a tenured Professor in the Department of Industrial Engineering at UPRM. Professor Carlo is the author and principal

3

advocate of a faculty resolution that explicitly challenges and seeks to undermine accommodations identical to those I receive under binding federal agreements. Professor Carlo publicly advocated against reasonable accommodations in a November 2023 blog post and has coordinated with Professor Ferrer to resist compliance with federal disability law. Professor Carlo is married to Dean Cristina Pomales García, creating a conflict of interest that pervades this case. I sue Professor Carlo in both his individual capacity (for damages under § 1983) and his official capacity (for injunctive and declaratory relief).

6.3. Defendant Cristina Pomales García is the Dean of the College of Engineering at UPRM. She has supervisory authority over the Department of Industrial Engineering where both Professor Ferrer and Professor Carlo work, and where I am enrolled. Dean Pomales is married to Professor Carlo, the author of the discriminatory resolution. Despite this conflict of interest, she has failed to recuse herself from matters involving my accommodations and has failed to take action to ensure compliance with federal disability law in her college. I sue Dean Pomales in her official capacity for injunctive and declaratory relief.

6.4. Defendant Thyrzia M. Roura Cordero is the Interim Director of OSEI at UPRM. OSEI is responsible for determining and coordinating accommodations for students with disabilities. Director Roura has failed to take effective action to enforce my accommodations despite repeated complaints, knowledge of ongoing violations, and two binding federal agreements requiring the University to provide my accommodations. I sue Director Roura in her official capacity for injunctive and declaratory relief.

4

6.5. Defendant Celines Alfaro Almeyda is an Academic Counselor at UPRM who was assigned to me pursuant to the December 2022 Mediation Agreement with the Office for Civil Rights ("OCR"). Counselor Alfaro has systematically failed to provide me with the academic counseling services required by that agreement. I sue Counselor Alfaro in her official capacity for injunctive and declaratory relief.

## 7.   FACTUAL BACKGROUND

**8.   A. My Disability and Approved Accommodations**

8.1. I enrolled at UPRM in 2019 and immediately registered with OSEI, providing all required medical and psychological documentation. OSEI reviewed my documentation and determined that I am eligible for comprehensive accommodations due to my Level 1 Autism Spectrum Disorder.

8.2. My autism affects several major life activities, including learning, concentrating, thinking, reading, and communicating. Specifically, I experience substantial limitations in: executive function and working memory; sensory processing and information integration; decoding ambiguous or implicit instructions; managing multiple simultaneous cognitive demands; and anxiety in unstructured or unpredictable academic situations.

8.3. My approved accommodation plan, documented by OSEI and incorporated into binding federal agreements, includes: time and a half on exams and quizzes in non-programming courses; double time on programming assignments and exams; division of exams into two parts administered on separate days; study guides that follow specific requirements ("Exhibit A") specifying exact exam content, professor recommendations, and practice problems; fifteen-day advance notice of all exams and quizzes; clear and explicit written instructions with important

5

information highlighted; no evening classes or exams after 6:30 PM; alternative presentation methods (no oral presentations); and availability of professors to answer questions and review materials.

8.4. The Exhibit A study guide format is essential to my ability to succeed academically. As documented in the 2020 FRBP Agreement, these guides must include: a specific index of content to be evaluated; the professor's recommendations for studying; practice exercises on the exact topics that will appear on the exam; and an opportunity to review the guide with the professor before the exam. The purpose of Exhibit A is to reduce the cognitive effort I must expend to "decode" what I need to study—a task that is extraordinarily difficult for someone with my disability and that neurotypical students perform automatically.

## 9. B. The 2020 OCR Agreement (FRBP Agreement)

9.1. In 2020, after the University violated my accommodations, my mother filed a complaint with the U.S. Department of Education's Office for Civil Rights. On July 17, 2020, the University entered into a "Facilitated Resolution Between Parties" ("FRBP") Agreement in OCR Case No. 02-20-2049. This agreement was signed by the University's legal counsel and is binding on the institution.

9.2. The FRBP Agreement requires the University to provide all of my approved accommodations, including specifically: exams divided into two parts with at least one day between administrations; study guides conforming to Exhibit A requirements; fifteen-day advance notice of exams; extended time (time and a half for non-programming; double time for programming); and professor availability for questions and review.

6

10.    **C. The 2022 OCR Mediation Agreement**

10.1.    In 2022, the University violated my accommodations again, and we filed a second OCR complaint. On December 15, 2022, the parties signed a Mediation Agreement in **OCR Case No. 02-22-2112**. This agreement was also signed by University legal counsel and explicitly incorporates and preserves all terms of the 2020 FRBP Agreement.

10.2.    The Mediation Agreement added additional requirements: mandatory training on reasonable accommodations for all Engineering faculty, to be completed by May 31, 2023; assignment of a qualified academic counselor (Defendant Alfaro) by January 26, 2023; twenty-four to forty-eight hour response time for professors to address accommodation concerns; and reimbursement for courses failed due to accommodation violations.

10.3.    The University has failed to comply with the Mediation Agreement's training requirement. As of December 2025—more than thirty months after the deadline—the mandatory faculty training has not been completed. When the University attempted to locate records of the training in response to a litigation hold notice in late November 2025, it discovered that the documentation does not exist because the training was never provided.

11.    **D. Professor Ferrer's Refusal to Provide Accommodations**

11.1.    At the beginning of the Fall 2025 semester, OSEI sent official accommodation notifications to all of my professors, including Professor Ferrer. On August 11, 2025, OSEI held a mandatory orientation for faculty about my accommodations, including a detailed presentation about the Exhibit A study guide requirements.

7

Professor Ferrer attended this orientation. She was fully informed of her obligations.

11.2.    On August 28, 2025, I contacted OSEI to report that Professor Ferrer had told me directly that she would "not perform the accommodations" because they would give me an "advantage" and that "she would not be forced to do so." That same day, Professor Ferrer sent an email to me, copying OSEI and University legal counsel, in which she wrote that she would only provide accommodations that do not represent an "advantage." She stated that dividing exams into two parts would require "additional work" for her and she refused to do it. She stated that providing detailed study guides conforming to Exhibit A would be "practically giving him the exam content" and she refused to do that as well.

11.3.    **This email is direct, documentary evidence of intentional discrimination. Professor Ferrer characterized my legally mandated accommodations as "advantages."** She unilaterally decided that she would not comply with federal law. She prioritized her own convenience over my civil rights. She did all of this in writing, with full knowledge that OSEI and the University's legal counsel were copied.

11.4.    On September 4, 2025, I was forced to take a quiz in Professor Ferrer's class without any accommodations—no extra time, no division, no advance notice. On September 5, 2025, OSEI held an emergency meeting with Professor Ferrer. According to OSEI's notes, she verbally agreed to provide study guides, divide exams, and give fifteen-day advance notice. But she did not keep these promises.

11.5.    On September 11, 2025, Professor Ferrer sent an email proposing to unilaterally modify my grading scheme: I would not take quizzes or submit related

8

assignments, and my grade would be based only on midterms and a final exam. She claimed it was "impractical" to announce quizzes fifteen days in advance. This proposed modification violated my accommodation plan by denying me opportunities to earn points that other students could earn. I did not agree to this modification.

11.6. On September 11, 2025, my mother filed a third OCR complaint (OCR Case No. 02-25-xxxx) documenting Professor Ferrer's violations and the University's failure to enforce compliance.

11.7. On September 26, 2025, a formal meeting was held at OSEI with me, my mother, Director Roura, University legal counsel (Lcda. Huyke), and Professor Ferrer (by telephone). New agreements were reached and documented in writing. However, on October 2, 2025, Professor Ferrer sent an email "correcting" the meeting notes, unilaterally changing the terms that had been agreed upon in the presence of the University's own attorney. This pattern—agreeing to accommodations in meetings to avoid confrontation, then repudiating those agreements in writing afterward—demonstrates bad faith.

11.8. On October 15, 2025, I took Exam #1 in Professor Ferrer's course. After receiving my graded exam, I discovered that she had deducted points for requirements that were not stated in the exam instructions. One problem stated that I should choose "Option A or Option B" to solve it. I chose one option. Professor Ferrer deducted points, claiming I should have used "both options in combination." But that is not what the instructions said.

11.9. This is precisely why I need clear, explicit instructions as an accommodation. My brain processes language literally. When instructions say "A or B," I understand

9

that as a choice between alternatives, not as "actually you need to do both." Professor Ferrer knows this is a disability-related limitation. She attended the OSEI orientation. She has my accommodation documentation. By constructing an exam with ambiguous instructions and then penalizing me for my literal interpretation, Professor Ferrer discriminated against me on the basis of my disability.

**12.    E. The Carlo Resolution: Coordinated Institutional Resistance**

12.1.    In the fall of 2025, Professor Héctor J. Carlo Colón drafted a faculty resolution titled "Resolución sobre la aplicación adecuada de acomodos académicos en educación superior y la protección de los requisitos académicos esenciales" ("Resolution on the Proper Application of Academic Accommodations in Higher Education and the Protection of Essential Academic Requirements"). On November 18, 2025, this resolution was formally presented to the Academic Senate of UPRM by Senator Mercedes Ferrer Alameda—the same professor who has been refusing my accommodations.

12.2.    The Carlo Resolution explicitly attacks accommodations that are **identical** to mine. The resolution argues against: dividing exams into two parts "with days in between because the student cannot memorize"; providing "simplified study materials that indicate exactly what will be included on the exam and in what order"; "prominently marking important information in problems"; and providing "detailed and specific instructions that can be followed rigorously."

12.3.    The specificity of these descriptions is extraordinary. The resolution does not speak in generalities—it describes my exact accommodations, down to details like exam division "because the student cannot memorize." The only way the

10

resolution's authors could know such details is through access to my confidential accommodation records, which raises serious questions about FERPA violations.

12.4. The timing of the resolution is equally damning. The resolution was drafted after I filed my third OCR complaint in September 2025. It was presented to the Academic Senate on November 18, 2025. The resolution is retaliation for my exercise of federally protected rights.

12.5. The resolution contains multiple legally erroneous statements that evidence discriminatory animus. It asserts that accommodations like mine "are not compatible with the education a university student comes to seek" and "do not align with the graduate profile." It claims that OSEI has been applying K-12 standards under IDEA rather than postsecondary standards under Section 504—a legally incorrect characterization that ignores the broader protections of Section 504 and the ADA. It states that "there is no precedent" for universities losing federal funding over accommodation disputes—an assertion that is factually false and legally irresponsible.

12.6. The resolution proposes creating faculty committees with authority to deny accommodations—a proposal that directly contradicts federal law, which places the burden of proving "fundamental alteration" on the institution, not on individual professors or faculty committees. Under Wynne v. Tufts University School of Medicine, 976 F.2d 791 (1st Cir. 1992), a university may only deny an accommodation if it demonstrates through "professional, deliberate, and expert academic judgment" that the accommodation would fundamentally alter the program. A general faculty resolution cannot substitute for this individualized, documented analysis.

11

12.7.  When the University received the litigation hold notice on November 26, 2025, it scrambled to find documentation of the mandatory faculty training required by the 2022 Mediation Agreement. University officials discovered that the training had never been completed. In the days that followed, the University's legal counsel (Lcda. Huyke) recommended withdrawing the Carlo Resolution. This recommendation led to an "acalorada discusión" (heated argument) between Lcda. Huyke and Dean Pomales—who, as Professor Carlo's wife, had an obvious personal interest in defending the resolution. The University's decision to withdraw the resolution after receiving notice of litigation demonstrates consciousness of guilt.

## 13.  F. Professor Carlo's Prior Public Advocacy Against Accommodations

13.1.  Professor Carlo's discriminatory intent is further evidenced by his public writings. On November 30, 2023, he published a blog post titled "La razonabilidad de los acomodos razonables en las universidades" on his personal website (hjcarlo.wordpress.com). In this post, Professor Carlo questions the reasonableness of accommodations similar to mine, presents data about students with accommodations in his courses in a manner that raises FERPA concerns, and argues that certain accommodations should not be provided.

13.2.  The blog post and the resolution together demonstrate a pattern of ideological opposition to disability accommodations that predates and motivates the specific discrimination against me. This is not a case of good-faith disagreement about how to implement accommodations—it is a case of faculty members who fundamentally object to the legal requirement to provide accommodations and who have coordinated their efforts to resist compliance.

12

## 14.    G. Dean Pomales's Conflict of Interest

14.1.    Dean Cristina Pomales García has supervisory authority over the Department of Industrial Engineering, where both Professor Ferrer and Professor Carlo are employed and where I am enrolled. Dean Pomales is married to Professor Carlo. This creates an obvious and irreconcilable conflict of interest.

14.2.    Dean Pomales has failed to recuse herself from matters involving my accommodations or the Carlo Resolution. Instead, she has defended her husband's resolution even against the advice of University legal counsel. Her "heated argument" with Lcda. Huyke over the resolution's withdrawal demonstrates that she has allowed her personal relationship to compromise her obligations as Dean to ensure compliance with federal law.

## 15.    H. OSEI's Deliberate Indifference

15.1.    Director Roura and OSEI have been aware of the violations against me since 2020. They facilitated two OCR agreements. They attended meetings where Professor Ferrer agreed to provide accommodations. They received my complaints when those agreements were broken. Yet OSEI has taken no effective action to enforce compliance.

15.2.    OSEI's response to Professor Ferrer's documented violations has been limited to "acknowledgment" emails and ineffective meetings. OSEI has not referred Professor Ferrer for disciplinary action. OSEI has not escalated the matter to University administration in a way that produced results. OSEI has not used its institutional authority to protect me from discrimination.

15.3.    Director Roura herself has privately acknowledged that she is "limited in action" by institutional structures—an admission that OSEI lacks the authority or

13

willingness to enforce accommodations against resistant faculty. This structural failure demonstrates deliberate indifference at the institutional level.

**16.     I. Counselor Alfaro's Failure to Provide Services**

16.1.     The 2022 Mediation Agreement required the University to assign me a qualified academic counselor by January 26, 2023. Defendant Alfaro was assigned. Since then, she has systematically failed to provide equal counseling services: she does not respond to meeting requests within reasonable timeframes; she provides evasive responses and refers me to others without resolving my concerns; she has failed to attend scheduled meetings about accommodation implementation; and she has failed to provide guidance on academic planning and course selection.

16.2.     As a result of Counselor Alfaro's failures, I have experienced delays in academic progress and inefficient use of my Pell Grant eligibility. The Mediation Agreement specifically required counseling services to help me navigate the University's complex requirements with my disability—services I have not received.

**17.     J. Harm to Me**

17.1.     The Defendants' conduct has caused me substantial harm. Academically, I have been forced to take assessments without my required accommodations, resulting in lower grades than I would have earned with accommodations. I have had to repeat courses. My expected graduation date of December 2025 is now uncertain. My Pell Grant eligibility has been depleted because I have had to repeat courses due to accommodation violations.

17.2.     Emotionally, I suffer from severe anxiety and distress. I feel humiliated and degraded by Professor Ferrer's characterization of my accommodations as "advantages." I am afraid to attend class. My autism-related anxiety has worsened

14

significantly. I have required increased mental health treatment. I have lost confidence in my academic abilities.

17.3. Economically, I have paid tuition for courses I should not have had to repeat. My Pell Grant money has been consumed by repeated courses. I may need additional semesters to complete my degree, which will cost more money and delay my entry into the workforce.

17.4. My dignity has been harmed. The Carlo Resolution—presented publicly to the Academic Senate by my own professor—describes my confidential accommodations in detail and argues that they should not be provided. I have been made a target of institutional hostility. I have been denied equal educational opportunity. I have been forced to fight for basic civil rights that should be automatic.

## 18.    CLAIMS FOR RELIEF

### 19.    Count I: Violation of Title II of the ADA (Against All Defendants)

19.1. I incorporate by reference all preceding paragraphs as if fully set forth herein.

19.2. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

19.3. Under 28 C.F.R. § 35.130(b)(7), a public entity must make reasonable modifications in policies, practices, or procedures when necessary to avoid discrimination on the basis of disability, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of the service, program, or activity.

15

19.4.  I am a qualified individual with a disability. The University is a public entity. Defendants have denied me the benefits of the University's programs by refusing to provide reasonable modifications (accommodations) that are necessary to avoid discrimination. Defendants have not demonstrated that my accommodations would fundamentally alter the Industrial Engineering program. To the contrary, I have successfully completed courses with these accommodations when they were properly implemented.

19.5.  Defendants have acted with deliberate indifference, as shown by their continued violations despite two OCR agreements, three OCR complaints, and repeated formal notice of noncompliance.

20.  **Count II: Violation of Section 504 of the Rehabilitation Act (Against All Defendants)**

20.1.  I incorporate by reference all preceding paragraphs as if fully set forth herein.

20.2.  Section 504 provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

20.3.  The University receives federal financial assistance, including Title IV funds. I am an otherwise qualified individual with a disability. Defendants have subjected me to discrimination by refusing to provide academic adjustments (accommodations) necessary to ensure that I am not denied the benefits of the University's programs. The standard for liability under Section 504 is the same as under Title II of the ADA.

16

**21.    Count III: Retaliation Under the ADA and Section 504 (Against University, Board, Ferrer, and Carlo)**

21.1.    I incorporate by reference all preceding paragraphs as if fully set forth herein.

21.2.    The ADA prohibits retaliation against any individual who has opposed any act or practice made unlawful by the ADA or who has filed a charge or participated in any investigation, proceeding, or hearing under the ADA. 42 U.S.C. § 12203(a). Section 504 incorporates the same anti-retaliation protections. 29 U.S.C. § 794(d); 34 C.F.R. § 104.61.

21.3.    I engaged in protected activity by filing OCR complaints in 2020, 2022, and 2025, and by opposing Professor Ferrer's refusal to provide my accommodations. Defendants retaliated against me by: Professor Ferrer's increasingly hostile treatment after I complained; Professor Carlo's drafting of the resolution attacking my specific accommodations; Senator Ferrer Alameda's presentation of that resolution to the Academic Senate after my September 2025 OCR complaint; and the University's failure to take corrective action. The temporal proximity between my protected activity and the adverse actions, combined with the specificity of the Carlo Resolution targeting my exact accommodations, establishes a causal connection.

**22.    Count IV: Hostile Educational Environment (Against All Defendants)**

22.1.    I incorporate by reference all preceding paragraphs as if fully set forth herein.

22.2.    Title II and Section 504 prohibit disability-based harassment that is sufficiently severe, pervasive, or persistent to create a hostile educational environment. The harassment I have experienced—including Professor Ferrer's characterization of my accommodations as "advantages," her open refusal to comply with federal law,

17

the Carlo Resolution publicly attacking my accommodations, and the University's deliberate indifference—has altered the conditions of my education and created an environment that is hostile and intimidating.

22.3.   The University had actual knowledge of this harassment through OSEI, University legal counsel, the OCR complaints, and the public presentation of the Carlo Resolution to the Academic Senate. The University's response was clearly unreasonable and amounts to deliberate indifference.

## 23.   Count V: Violation of 42 U.S.C. § 1983 (Against Ferrer and Carlo in Individual Capacity)

23.1.   I incorporate by reference all preceding paragraphs as if fully set forth herein.

23.2.   Section 1983 provides a remedy for the deprivation of rights secured by the Constitution or laws of the United States by persons acting under color of state law. 42 U.S.C. § 1983.

23.3.   Professor Ferrer and Professor Carlo, at all relevant times, acted under color of state law as employees of a public university. They deprived me of my rights under the Equal Protection Clause of the Fourteenth Amendment by intentionally discriminating against me on the basis of my disability. They deprived me of my rights under the Due Process Clause by denying me accommodations that I am entitled to under binding federal agreements without adequate process. Their conduct was willful, intentional, and undertaken with reckless disregard for my federally protected rights.

## 24.   Count VI: Violation of FERPA (Against University and Board)

24.1.   I incorporate by reference all preceding paragraphs as if fully set forth herein.

18

24.2.    The Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232g, prohibits the disclosure of personally identifiable information from education records without consent. Disability accommodation records are education records protected by FERPA. Courts have held that information is "personally identifiable" under FERPA when the combination of disclosed details would allow a reasonable person to identify the student.

24.3.    The Carlo Resolution describes accommodations with such specificity that they are identifiable as mine within the small community of the Industrial Engineering Department. The resolution's references to exam division "because the student cannot memorize" and other detailed accommodation descriptions, presented in the context of a known dispute within the department, constitute disclosure of personally identifiable information. This disclosure was made without my consent.

24.4.    While FERPA does not create a private right of action, violations of FERPA are relevant to my ADA, Section 504, and § 1983 claims as evidence of discriminatory intent and retaliatory conduct, and may be considered by the Court in fashioning equitable relief.

25.    **Count VII: Breach of Contract (Against University and Board)**

25.1.    I incorporate by reference all preceding paragraphs as if fully set forth herein.

25.2.    The 2020 FRBP Agreement and 2022 Mediation Agreement are binding contracts between me and the University. I have performed my obligations under these agreements by maintaining enrollment, submitting required documentation, and requesting accommodations through proper channels. The University has breached these agreements by failing to provide my accommodations, failing to complete

19

the mandatory faculty training, and failing to provide adequate academic counseling services. I have been damaged by these breaches.

## 26. PRAYER FOR RELIEF

27. WHEREFORE, I respectfully request that this Court grant the following relief:

### 28. *Declaratory Relief*

28.1. A declaration that Defendants have violated Title II of the ADA, Section 504 of the Rehabilitation Act, and my constitutional rights; that the 2020 FRBP Agreement and 2022 Mediation Agreement are valid and enforceable; that I am entitled to all accommodations specified in those agreements; and that the Carlo Resolution violates federal law.

### 29. *Preliminary Injunctive Relief*

29.1. An order requiring Defendants to immediately implement all accommodations required by the OCR agreements; invalidating all assessments administered to me without proper accommodations during Fall 2025 and providing opportunities to retake them with accommodations; removing Professor Ferrer from any courses in which I am enrolled; prohibiting retaliation against me; and establishing compliance monitoring.

### 30. *Permanent Injunctive Relief*

30.1. An order requiring comprehensive institutional reforms including: mandatory disability accommodations training for all Engineering faculty by an external expert; policy reforms with meaningful enforcement mechanisms; establishment of an accommodation compliance office with authority to enforce accommodations; nullification of the Carlo Resolution and prohibition of similar resolutions; assignment of a new academic counselor with supervision; correction

20

of my academic record; restrictions on individual Defendants' involvement in accommodation decisions; and independent monitoring for a period of three years.

### 31.    *Compensatory Damages*

31.1.    Compensatory damages for emotional distress, lost educational opportunities, economic losses including tuition for repeated courses and depleted Pell Grant eligibility, and harm to my academic and professional reputation, in an amount to be determined at trial.

### 32.    *Punitive Damages*

32.1.    Punitive damages against Defendants Ferrer and Carlo in their individual capacities, their conduct having been willful, intentional, and undertaken with reckless indifference to my federally protected rights.

### 33.    *Attorneys' Fees and Costs*

33.1.    Reasonable attorneys' fees and costs under 42 U.S.C. § 12133, 29 U.S.C. § 794a(b), and 42 U.S.C. § 1988, if I obtain legal representation.

### 34.    *Other Relief*

34.1.    Such other and further relief as this Court deems just and proper.

## 35.    JURY DEMAND

35.1.    I demand a trial by jury on all claims and issues so triable.

RESPECTFULLY SUBMITTED.

Dated: December 3, 2025

21

_____
**DERECK J. GARCÍA PÉREZ**
Pro Se Plaintiff
Urb. Valle Hermoso SN18 Calle Amapola
Hormigueros, PR 00660-1304
Telephone: (939) 299-9610
Email: dereck648@gmail.com

22